Arthur S. **BECHHOEFER, Plaintiff,**

v.

The **UNITED STATES DEPARTMENT OF JUSTICE, DRUG ENFORCEMENT ADMINISTRATION,** Robert Nearing **and Jeffrey Gelina, Defendants.**

**No. 95–CV–6326L.**

United States District Court, W.D. New York.

Aug. 2, 1996.

Anthony J. Adams, Jr., Davidson, Fink, Cook & Gates, Rochester, NY, for plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., Rochester, NY, for defendants.

### DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Arthur S. Bechhoefer, commenced this action under the Privacy Act ("the Act"), 5 U.S.C. § 552a, and the First Amendment to the United States Constitution. Defendants are the Drug Enforcement Administration ("DEA") of the United States Department of Justice, and two DEA agents, Robert Nearing and Jeffrey Gelina. Defendants have moved for summary judgment, and plaintiff has cross-moved for partial summary judgment on the issue of liability on his claim against the DEA.

### FACTUAL BACKGROUND

Plaintiff, who resides in Yates County, New York, belongs to a group known as the Bluff Point Association, Inc., and to an affiliated group, Friends of Keuka Lake. These groups are concerned with land use in the Keuka Lake area. As an officer of these groups, plaintiff alleges that part of his duties relates to crime and security in the area. He states that occasionally local residents have contacted him to report suspected drug activities in the area.

Plaintiff alleges that on July 15, 1993, after he had received one such report, he called

defendant Gelina on the telephone to pass the information on to the DEA. Gelina told plaintiff to put his information in a letter and send it to him.

Plaintiff agreed to send Gelina a letter, but he alleges that he did so only after receiving Gelina's assurances that the letter would remain confidential. Gelina alleges that he told plaintiff that he would try to keep the letter confidential, but that he could not guarantee its confidentiality.

Plaintiff did send a letter to Gelina. The letter, which contained the heading, "CONFIDENTIAL," named certain people suspected of involvement in drug trafficking. Some of the persons mentioned were members of the Yates County Sheriff's Department ("the Sheriff's Department"). Plaintiff stated in the letter that "[t]he Sheriff's Department cannot be trusted to provide any security, nor can its members be considered reliable." Defendants' Motion Ex. 2.

At some point, Michael J. Christensen, an investigator with the Sheriff's Department, became aware of the letter. Christensen was one of the persons named in the letter. Although the letter did not explicitly accuse him of any wrongdoing, plaintiff wrote that Christensen had been the "right hand man" of a former Undersheriff, who plaintiff stated "may be involved in the distribution of drugs ..." Defendants' Motion Ex. 2.

Nearing and Gelina had arranged to meet plaintiff to discuss his allegations, but for some reason the meeting did not occur. Eventually plaintiff became dissatisfied with the way that Nearing and Gelina were handling the matter and refused to meet with them unless they sent him their "credentials," which they declined to do. Bechhoefer Affidavit Ex. C.

Nearing and Gelina decided not to pursue the matter any further. They did, however, send a copy of the letter to the Sheriff's Office. Gelina alleges that he did so at the request of the Sheriff's Office and at the direction of DEA's then-Resident Agent in Charge, James Kenney. Christensen states in a document filed in a related state court action, that Nearing faxed it to him on August 5, 1993. He states that he called the

DEA office that day and spoke to Gelina. Christensen asked Gelina if he had ever gotten the letter and Gelina stated that he had. Christensen left a message for Nearing to call him, which Nearing did shortly thereafter. Christensen asked Nearing about the letter, and Nearing stated that it was from Bechhoefer. Christensen asked if he could have a copy of the letter, and Nearing promised to fax him a copy.

As a result of these events, plaintiff was later prosecuted by the Yates County District Attorney for making false statements. The charges were eventually withdrawn. Plaintiff also alleges that a separate criminal prosecution was brought against him, which resulted in his acquittal after a jury trial. He has also been sued, apparently for defamation, in three actions in state court.

Based on these allegations, plaintiff asserts two causes of action: first, a claim against the DEA under the Privacy Act, and, second, a claim against Gelina and Nearing under the First Amendment.

### DISCUSSION

#### I. Privacy Act Claim

The first cause of action is based on 5 U.S.C. § 552a, which provides in part that "[n]o agency shall disclose any record which is contained in a system of records ... to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, ..." with certain exceptions that will be discussed below.

■ Defendants contend that plaintiff's claim must fail because the letter in question does not constitute a "record" and is not a document contained in a "system of records." Because I believe that the letter is not a "record," judgment must be entered in favor of defendants and plaintiff's complaint must be dismissed.

The threshold issue concerning this claim is whether the letter at issue was a "record." The Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, ... and that contains his name ... or other identifying particular ..." 5 U.S.C.

§ 552a(a)(4). Defendants contend that the letter is not a record for purposes of this action because it was not a document "about" plaintiff but only about persons other than plaintiff.

In support of their position, defendants rely upon *Unt v. Aerospace Corp.*, 765 F.2d 1440 (9th Cir.1985), in which the court, by a 2–1 majority, held that a letter sent by an employee of the defendant corporation to a federal agency regarding certain disputes he was having with his employer was not a record because it was not "about" him, but about the employer. The court said that the letter reflected directly on the employer's performance of its federal contract, but "only indirectly on any quality or characteristic possessed by" the plaintiff. *Id.* at 1449. Although the letter mentioned the plaintiff's problems with the employer, the court held, "this fact d[id] not change the communication into an item about him." *Id.*

In *Tobey v. NLRB*, 40 F.3d 469, 471 (D.C.Cir.1994), the District of Columbia Circuit also examined the requirement that information be "about" a person in order to constitute a record with respect to that person. The court stated that "the fact that information contains an individual's name does not mean that the information is 'about' the individual." To be "about" a person, the court stated, the information must not simply "apply to" him, but must "actually describe[ ] the individual in some way." *Id.* at 472. Applying that reasoning to the facts before it, the court held that a computer system used by the National Labor Relations Board to track and monitor cases before it, although it contained information showing which field examiner was assigned to a particular case, was not "about" the examiners. *Id.* at 471.

In my view, the language of the statute and the reasoning of these cases compel the conclusion that the letter at issue in the instant case was not a "record" with respect to plaintiff because it was not "about" him. Both here and in *Unt,* the letters were not "about" the authors of the letters, but about the subjects of the letters: in *Unt,* the author's employer, and here, certain alleged drug dealers.

Although there might be situations in which a letter could contain sufficient information about the author to be deemed "about" the author, this is not such a case. Plaintiff's letter contained many accusations of illegal activity on the part of various other persons, but said virtually nothing about plaintiff himself. If the letter was "about" anyone, it was about the people that plaintiff accused of criminal activities, not about himself. *Unt,* 765 F.2d at 1449.[1]

In opposition to defendants' motion, plaintiff relies principally upon *Sterling v. U.S.,* 798 F.Supp. 47 (D.D.C.1992)[2] in which the court denied a motion to dismiss a Privacy Act claim by a prisoner who alleged that the government had violated the Act by releasing, in response to a Freedom of Information Act request by his cellmate, a redacted copy of a document containing information about the cellmate that the plaintiff had provided to prison authorities under a promise of confidentiality. The plaintiff claimed that despite the redactions, his cellmate was able to deduce from the contents of the letter who had provided the information, and that as a result the plaintiff was subjected to death threats. In reaching its decision, the court stated that 5 U.S.C. § 552a(k)(2) exempts investigatory material from release if "the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence." *Id.* at 49.

---

1. Although the court in *Tobey* rejected the Ninth Circuit's requirement, set forth in *Unt,* that the information "reflect some quality or characteristic" of the individual involved, *see Tobey,* 40 F.3d at 472, the result that I reach in the case at bar would be the same under either circuit's standard.

2. Subsequent to its 1992 decision denying the motion to dismiss, the district court in *Sterling* granted summary judgment for the defendants on the ground that the plaintiff had not presented any evidence that defendants had acted intentionally or willfully. *Sterling v. United States,* 826 F.Supp. 570 (D.D.C.1993). On appeal by the plaintiff, the Court of Appeals for the District of Columbia Circuit, in an unpublished opinion, affirmed. 1994 WL 88894 (D.C.Cir. Mar. 11, 1994) (per curiam)).

■ I do not find the *Sterling* court's analysis persuasive. A close examination of the statute indicates that § 552a(k)(2) does not *prohibit* agencies from releasing material that would reveal the identity of a confidential source. Rather, it *allows* agencies to promulgate rules exempting certain types of documents from *mandatory* disclosure under other portions of the Act. Specifically, subsection (k)(2) states that "investigatory material compiled for law enforcement purposes" may be exempted from, *inter alia*, § 552a(d) (which provides that agencies must generally allow any person to gain access to his own record),

> [p]rovided, however, that if any individual is denied any right, privilege, or benefit that he would otherwise be entitled by Federal law, or for which he would otherwise be eligible, as a result of the maintenance of such material, such material shall be provided to such individual, except to the extent that the disclosure of such material would reveal the identity of a source who furnished information to the Government under an express promise that the identity of the source would be held in confidence . . .

The statute, then, states that under certain circumstances an agency *must* provide an individual with investigatory material, *unless* doing so would reveal the identity of a confidential source. In other words, an agency is not *required* to provide the material if it would thereby reveal the source's identity, but the statute nowhere *prohibits* the agency from providing such material. *See Rutner v. Reed*, 538 F.2d 443, 445 n. 1 (D.C.Cir.1976) (§ 552a(k)(2) "provides specific *authority to withhold* " information received under a promise of confidentiality) (emphasis added).

■ Thus, although the DEA has issued rules exempting certain materials pursuant to § 552a(k)(2), *see* 28 C.F.R. § 16.98, the effect of those rules is simply to relieve DEA of any obligation to release those materials upon the request of a person who would otherwise be entitled to see them. The rules do not state that information from a confidential informant cannot be released under any circumstances.

It is apparent, then, that plaintiff's reliance on § 552a(k)(2) is misplaced. It is clear from the statute that *restrictions* upon disclosure are set forth in § 552a(b), which is entitled "Conditions of Disclosure," and which states that "[n]o agency shall disclose any record which is contained in a system of records . . .," except in certain circumstances. Had Congress wanted to prohibit agencies from disclosing information that would reveal the identity of confidential sources, subsection (b) would have been the logical and obvious place to do so. Subsection (k), on the other hand, which is entitled "Specific exemptions," is clearly not intended to prohibit agencies from releasing certain types of information, but simply to allow them to avoid the Act's mandatory-disclosure requirements for such information. Subsection (k), then, is irrelevant to this case.[3]

I conclude, therefore, that plaintiff's letter was not a "record" for purposes of this action because it was not "about" plaintiff. Under § 552a(b), defendants were accordingly not obligated to obtain plaintiff's permission to release the letter, and plaintiff's claim under the Privacy Act therefore fails.[4]

## II. First Amendment Claim

■ In his second cause of action against Gelina and Nearing, plaintiff alleges that the agents violated plaintiff's First Amendment

---

**3.** I also note that plaintiff's complaint alleges only a violation of § 552a(b); subsection (k) is mentioned only in plaintiff's response to defendants' motion.

**4.** Although it appears highly doubtful whether this solitary letter, which defendants passed on to Deputy Christensen, was contained in a "system of records," *see, e.g., Boyd v. Secretary of the Navy*, 709 F.2d 684, 686–87 (11th Cir.1983) (memorandum prepared by plaintiff's supervisors, which was prepared on official Navy stationery and labeled "memorandum for the record," was not in a "system of records," since it was not keyed to plaintiff's name and was kept in a random-type file, and hence was not protected from disclosure under Privacy Act), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), my finding that the letter was not a record makes it unnecessary for me to reach that question, or defendants' assertion that disclosure of the letter was permitted under the Act as a "routine use."

540

rights to free speech and to petition the government. This claim is asserted directly under the Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which the Supreme Court held that plaintiff's may sue federal officials for damages arising from the officials' violation of the plaintiff's constitutional rights.

Plaintiff contends that disclosure of the letter to the Sheriff's Department "punished" him for exercising his First Amendment rights. I am not persuaded by this contention.

Because *Bivens* actions and actions under 42 U.S.C. § 1983 "share the same 'practicalities of litigation,' federal courts have typically incorporated 1983 law into *Bivens* actions." *Tavarez v. Reno,* 54 F.3d 109, 110 (2d Cir. 1995) (quoting *Burnett v. Grattan,* 468 U.S. 42, 50, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36 (1984)). Thus, § 1983 cases involving First Amendment claims are relevant to an analysis of plaintiff's claims in the case at bar.

Although plaintiff asserts that defendants violated two separate rights—his right to free speech and his right to petition the government, which includes the right to approach investigative and prosecutorial authorities concerning alleged unlawful activities, *see Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1353 (2d Cir.1994), the gist of these claims is the same: that by sending the letter to Christensen, defendants in effect retaliated against plaintiff because he had provided them with information about suspected drug activity. Assuming that plaintiff's actions did amount to an exercise of both of these First Amendment rights, then, for purposes of the summary judgment motions this cause of action can be analyzed as a single claim.

■ To establish a violation of one's rights under the First Amendment, a plaintiff must show that the defendants took some action against him because of his exercise of those rights. *See, e.g., Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Jeffries v. Harleston,* 52 F.3d 9, 13 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995). Plaintiff has presented

no evidence whatsoever of such action here. The mere fact that the agents sent a copy of the letter to the Sheriff's Department does not suggest any desire on their part to punish plaintiff or that they were somehow motivated by the fact that plaintiff had written the letter. Furthermore, there is no indication that they were in any way involved in instituting the criminal prosecutions or civil lawsuits against plaintiff subsequent to the letter's distribution. Thus, the acts that were allegedly taken against plaintiff on account of his exercise of his rights were not even taken or instigated by the agents.

### CONCLUSION

Defendants' motion for summary judgment (Item 10) is granted. Plaintiff's cross-motion for partial summary judgment (Item 15) is denied. The complaint is dismissed.

IT IS SO ORDERED.