Michael G. DEVINE, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

Docket No. 99–6059.

United States Court of Appeals, Second Circuit.

Argued: Oct. 6, 1999.

Decided: Feb. 1, 2000.

Jack Long, Clark & Long, Burlington, VT, for Plaintiff–Appellant.

Carol L. Shea, Assistant United States Attorney for the District of Vermont, Burlington, Vermont (Charles R. Tetzlaff, United States Attorney, Helen M. Toor, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before: JACOBS, CALABRESI, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Plaintiff-appellant Michael G. Devine appeals from a judgment of the United States District Court for the District of Vermont (J. Garvan Murtha, *Chief Judge*), granting summary judgment dismissing Devine's claims under the Privacy Act of 1974, 5 U.S.C. § 552a (1994 & Supp.1999)

("Privacy Act"). Devine contends that the District Court erred in holding, as a matter of law, that the release of a letter written by the Inspector General of the United States Department of Justice ("IG") to a Congressional subcommittee was a permitted disclosure to Congress pursuant to 5 U.S.C. § 552a(b)(9). We disagree and, for the reasons that follow, affirm.

## BACKGROUND

In July 1995, the Office of the Inspector General ("OIG") initiated an investigation into allegations that Immigration and Naturalization Service officials, including Devine, had created a false picture of working conditions during a fact-finding visit by members of the Congressional Task Force on Immigration Reform to Miami on June 10, 1995. These allegations were contained in a complaint signed by nearly fifty INS employees. The complaint was delivered to Congressman Elton Gallegly, former chairman of the Congressional Task Force on Immigration Reform and a member of the Subcommittee on Immigration and Claims of the Judiciary Committee of the U.S. House of Representatives ("Subcommittee"), who in turn asked the Department of Justice to investigate the matter. The Attorney General requested that the OIG conduct an investigation and prepare a report with its findings. At the time of these events, Devine served as Deputy Regional Director of the INS's Eastern Regional Office in Burlington, Vermont.

In June 1996, the OIG issued a 197–page report ("Report") setting forth its findings that certain INS employees, including Devine, had intentionally misled the Congressional delegation and recommending that disciplinary action be taken against these employees. On June 20, 1996, the OIG released its Report to the Subcommittee, which had made an official request for a copy of the Report as soon as it was completed. The OIG included with the

Report a short summary of its findings ("Executive Summary"). At this time, the OIG notified the Subcommittee of the privacy interests of the INS employees criticized in the Report and asked the Subcommittee not to disclose the Report outside the Subcommittee. Shortly after the OIG delivered its Report to the Subcommittee, the OIG became aware that a member of the Subcommittee had provided copies of the Executive Summary to the media. On June 21, 1996, articles regarding the OIG's investigation and findings appeared in several national newspapers, including *The New York Times, The Washington Post,* and *The Los Angeles Times.* On June 28, 1996, the DOJ's Office of Public Affairs informed the OIG that a member of the Subcommittee had released the entire OIG Report to the media and the next day, more detailed newspaper articles, describing the Report and identifying Devine as one of the INS employees criticized in the Report, appeared in several national newspapers. On July 5, 1996, the OIG posted the Executive Summary on its internet website. Over the next couple of months, the OIG provided copies of the Report only in response to official inquiries from members of Congress or other DOJ officials on a need-to-know basis. In each instance, OIG advised the recipient of the possible privacy interests of the employees named in the Report.

In September 1996, the Subcommittee asked the IG to testify at a public hearing about the OIG's findings. In anticipation of this hearing, Congressman Lamar Smith, Chairman of the Subcommittee, issued the OIG Report and an accompanying press release to the media on September 10, 1996. Two days later, the IG testified at the public hearing. Additional newspapers articles appeared following the IG's testimony. On September 13, 1996, the OIG instructed those who requested information pursuant to the Freedom of Information Act ("FOIA") to obtain a copy of its Report from the Subcommittee. On May 19, 1997, the Report was posted on the OIG website at the direction of the IG.

Based on the results of the OIG investigation, the DOJ charged Devine with, *inter alia,* neglect of duty and failing to cooperate in an official investigation. After an administrative hearing, the DOJ issued a final administrative decision that sustained the charges against Devine and imposed a one-grade demotion. Devine appealed that decision to the Merit Systems Protection Board ("MSPB"). After a hearing in June 1997, the MSPB reversed the DOJ's administrative decision and exonerated Devine of all the charges. The DOJ elected not to appeal the MSPB decision and that decision became final on August 4, 1998.

On October 1, 1998, the IG sent a letter ("IG letter") addressed to Congressmen Smith and Gallegly, in their capacities as, respectively, Chairman and Member of the Subcommittee, summarizing the outcome of the OIG's investigation and expressing his disappointment and "deep dissatisfaction" with the final results. Jt.App. at 62. The IG sent this letter expressing his outrage at the final results of the investigation even though the MSPB's decision had not been appealed approximately two months earlier. The IG letter criticized the MSPB's decision to vacate the punishment imposed on Devine by the DOJ and informed the Subcommittee that Devine had been named Acting Regional Director for the Eastern Region with the prospect that the designation would be made permanent. In late October 1998, staff members from the office of Congressman Gallegly informed the Special Counsel to the IG that Congressman Gallegly wanted to release the IG letter to the public. On October 28, 1998, the Special Counsel provided Congressman Gallegly's staff with a redacted version of the letter and requested that this redacted version be used if the letter were to be shared with the public. The redacted letter removed all references to particular INS employees, but identified and discussed Devine. On November 13, 1998, Congressman Gallegly released the

redacted version of the letter to the public with a press release. On November 24, 1998, *The Washington Post* published an article about the MSPB's decision and the IG's letter in response to it.

On June 11, 1998, Devine filed a complaint in the District of Vermont alleging both Privacy Act and constitutional violations. In November 1998, Devine moved to amend his complaint to include a claim that the IG violated the Privacy Act when he submitted his letter dated October 1, 1998 to the Subcommittee. Devine also moved for partial summary judgment, arguing that the DOJ violated the Privacy Act when it improperly disclosed the OIG Report, the Executive Summary, and the IG letter to the public. Thereafter, the government cross-moved for summary judgment on this ground and, in addition, moved for summary judgment on Devine's claim that the government violated the Privacy Act when it failed to establish safeguards to ensure the confidentiality and security of these records. In an order dated February 9, 1999, the District Court adopted Magistrate Judge Jerome J. Niedermeier's Report and Recommendation and granted Devine's motion to amend, denied Devine's motion for partial summary judgment and granted the government's motion for summary judgment on all grounds. The District Court found that the release of the Executive Summary to individuals and the posting of the Executive Summary and the Report were required by the FOIA. Additionally, the District Court held that the disclosure of the IG letter was a permitted disclosure under § 552a(b)(9) of the Privacy Act because the IG sent the letter to two members of a Congressional subcommittee that clearly had jurisdiction over the matters at issue. Finally, the District Court granted the government's motion for summary judgment on Devine's failure to safeguard claim, holding that the disclosures at issue could not be a basis for a claim under

§ 552a(e)(10) of the Privacy Act. *See* 5 U.S.C. § 552a(e)(10).

Devine filed a timely Notice of Appeal.

## DISCUSSION

■ Devine's only contention on appeal is that the release of the IG letter was not a permitted disclosure to Congress under § 552a(b)(9) of the Privacy Act and that the District Court erred in granting summary judgment and dismissing his complaint on that ground. "We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir.1998) (internal citation omitted). We will affirm if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Congress enacted the Privacy Act to "provide certain safeguards for an individual against an invasion of personal privacy," by requiring governmental agencies to maintain accurate records and providing individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves. Pub.L. No. 93–579, § 2(b), 88 Stat. 1896, 1896 (1974). To accomplish this purpose, the Privacy Act sets forth conditions for disclosure of private information and precludes an agency from disclosing information in its files to any person or to another agency without the prior written consent of the individual to whom the information pertains. *See* 5 U.S.C. § 552a(b). The principal enforcement mechanism for individuals whose rights under the Act have been violated is the provision of civil remedies contained in § 552a(g), which, among other things, authorizes an aggrieved individual to bring a civil suit "[w]henever any agency ... fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect

on an individual." *Id.* § 552a(g)(1)(D). The Privacy Act assigns the Office of Management and Budget ("OMB") chief responsibility for formulating guidelines on federal agency implementation of, and for overseeing federal agency compliance with, the Act. *Id.* § 552a(v).

■ The broad prohibition in § 552a(b) is subject to twelve exceptions, one of which, § 552a(b)(9), is relevant to the instant appeal. This exception permits disclosure of the information without the consent of the individual "to either House of Congress, or, to the extent of matter within its jurisdiction, any committee or subcommittee thereof, any joint committee of Congress or subcommittee of any such joint committee." *Id.* § 552a(b)(9). Devine contends that he was entitled to summary judgment because the DOJ's disclosure of the IG letter to Congressmen Smith and Gallegly did not fall within the intent of this exception. Specifically, Devine maintains that Congress did not intend for this exception to apply in circumstances where, as here, the submission of an agency's letter to the Subcommittee constituted a *de facto* release to the media in violation of the Privacy Act. In other words, Devine proposes reading a motive requirement into the exception, under which § 552a(b)(9) would not apply if the government agency knew or should have known that the information would eventually be released to the public. We disagree.

■ We begin by analyzing the statutory language of § 552a(b)(9) and in doing so, we must presume that the statute says what it means. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992);

*Greenery Rehabilitation Group, Inc. v. Hammon,* 150 F.3d 226, 231 (2d Cir.1998). In the usual case, if the words of a statute are unambiguous, judicial inquiry should end, and the law is interpreted according to the plain meaning of its words. *See Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).

Here, the exception to the prohibitions of the Privacy Act at issue provided in § 552a(b)(9) unambiguously permits federal agencies to disclose personal information about an individual without the individual's consent to a Congressional subcommittee that has jurisdiction over the matter to which the information pertains. It is undisputed that the IG addressed and sent his letter regarding the OIG investigation and the MSPB's decision to Congressman Gallegly in his official capacity as a member of the Subcommittee, not as an *individual* member of Congress.[1] In addition, Devine does not argue that the subject matter of the letter fell outside the jurisdiction of the Subcommittee to which it was sent. Thus, release of the IG letter falls squarely within the ambit of § 552a(b)(9). This construction is consistent with the overall statutory framework. Congress articulated specific conditions in other exceptions to the disclosure restrictions of the Privacy Act. *See, e.g.,* 5 U.S.C. § 552a(b)(5) (requiring "advance adequate written assurance[s]" from the requesting agency that the information "will be used solely as a statistical research or reporting record"); *id.* § 552a(b)(7) (requiring written request "specifying the particular portion of [the record] desired and the law enforcement activity for which the record is sought"). No such conditions

1. Accordingly, we do not address the factual question of whether the letter was sent to an *individual* member of Congress or the legal question of whether § 552a(b)(9) would apply under such circumstances. *Cf. Swenson v. United States Postal Serv.,* 890 F.2d 1075, 1077 (9th Cir.1989) ("The clear language of the Privacy Act exemption in § 552a(b)(9) applies only to a house of congress or a committee or subcommittee, not to individual congressmen."); OMB Circular, Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed.Reg. 28,955 (1975) ("OMB Guidelines") ("This language [in § 552a(b)(9)] does not authorize the disclosure of a record to members of Congress acting in their individual capacities without the consent of the individual.").

exist in § 552a(b)(9) and we shall not read in additional conditions such as the motive requirement advocated by Devine. *See BFP v. Resolution Trust Corp.,* 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." (internal quotation marks omitted)).

Finally, even if we were to look beyond the plain meaning of the statutory language, nothing in the legislative history alters our understanding of the statute's language. *See Ardestani v. INS,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (noting that the "strong presumption that the plain language of the statute expresses congressional intent is rebutted only in rare and exceptional circumstances when a contrary legislative intent is clearly expressed" (internal quotation marks and citations omitted)). This exception to § 552a(b)'s disclosure restrictions originated in the House bill, *see* H.R. 16,373, 93rd Cong., 2d Sess., 120 Cong. Rec. 36,653 (1974), passed the House without amendment[2] or debate, *see* 120 Cong. Rec. 36,-643–60, 36,955–77 (1974), and was incorporated into the compromise bill that was ultimately signed into law, *see* 120 Cong. Rec. 40,400–01 (1974) (Compromise Bill); 120 Cong. Rec. 40,880–86 (House discussion of Compromise Bill) (1974). The report from the Committee on Government Operations accompanying H.R. 16373 to the full House stated, with respect to this exception, that: "The final exception in the disclosure section relates to personal information needed by the Congress and its committees and subcommittees. Occasionally, it is necessary to inquire into such subjects for legislative and investigative reasons." H.R.Rep. No. 93–1416, at 13 (1974). The "Analysis of the House and Senate Compromise Amendments to the Federal Privacy Act," which Senator Ervin

and Representative Moorhead, the two principal sponsors of the legislation, endorsed as an expression of legislative intent and inserted in the Congressional Record, does not address this particular exception. 120 Cong. Rec. 40,405–08, 40,-881–83 (1974). In addition, the guidelines OMB promulgated pursuant to the Privacy Act, to which we may look for guidance, *see Albright v. United States,* 631 F.2d 915, 919 n. 5 (D.C.Cir.1980), are silent on this issue. *See* OMB Guidelines, 40 Fed. Reg. 28,948–78 (1975); Supplementary Guidelines, 40 Fed.Reg. 56,741–43 (1975). Thus, neither the Act's legislative history nor the OMB Guidelines lend support to Devine's argument that, contrary to the plain language of the statute, Congress intended the courts to read a motive requirement into the exception.

We do not think that *Tijerina v. Walters,* 821 F.2d 789 (D.C.Cir.1987), relied on by Devine, supports a different result. In *Tijerina,* the court held that an agency has no power under subsection (j), entitled "General exemptions," 5 U.S.C. § 552a(j), to exempt itself from the civil liability provisions of subsection (g) and that an agency's effort to do so contravenes the language of the Act and perverts the purpose behind the Act's general exemptions provision. *See Tijerina,* 821 F.2d at 796. The court, however, was construing a much broader exemption of the Privacy Act not at issue here. Moreover, the court observed that the government was urging a "completely anomalous use" of the exemption that was unsupported by the Act's language, framework or legislative history and that made "the Act a foolishness." *Id.* at 797. In this case, Devine cannot identify any basis grounded in the Act's statutory language, framework, or legislative history to support his interpretation of § 552a(b)(9). His argument that the application of the exception to this case undermines the purpose of the Act is thus unavailing.

**2.** H.R. 16,373 was amended to incorporate this exception prior to being reported by the

Committee on Government Operations to the full House. *See* H.R. 93–1416, at 1 (1974).

In sum, § 552a(b)(9) as written does not permit a construction that would incorporate a motive requirement into the exception. The disclosure of the IG letter falls within the plain meaning of the exception and our review of the Act's framework and legislative history does not belie this result. Accordingly, the District Court properly dismissed Devine's claim pursuant to 5 U.S.C. § 552a(b)(9).

## CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.