**Arthur S. BECHHOEFER, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE, Drug Enforcement Administration, Robert Nearing, Jeffrey Gelina, Defendants.**

**No. 95–CV–6326L.**

United States District Court, W.D. New York.

Oct. 25, 2001.

Anthony J. Adams, Jr., Gates and Adams, Rochester, NY, for Plaintiff.

Brian M. McCarthy, Asst. U.S. Atty., United States Attorney, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

### INTRODUCTION

This is an action under the Privacy Act ("the Act"), 5 U.S.C. § 552a. Plaintiff, Arthur S. Bechhoefer ("Bechhoefer"), alleges that in 1993, Robert Nearing and Jeffrey Gelina, agents of defendant Drug Enforcement Administration ("DEA") of the United States Department of Justice ("DOJ"), unlawfully disclosed to the Yates County (New York) Sheriff's Department a letter that plaintiff had sent to Gelina containing allegations of suspected drug activities in Yates County. The letter also alleged, or at least insinuated, that persons within the Sheriff's Department may have been involved in that drug activity and

that they could not be trusted with any confidential information concerning that activity.

It is conceded by the DEA that Agent Nearing, upon request, turned Bechhoefer's letter over to an investigator with the Yates County Sheriff's Department, Michael J. Christensen. As a result of that disclosure, plaintiff was charged by the Yates County District Attorney with falsely reporting an incident, in two separate criminal actions. Plaintiff was also sued, apparently for defamation, in three actions in state court. Plaintiff was acquitted on one set of criminal charges, and the other was dropped. The civil actions were eventually dismissed as well.

Plaintiff commenced this action on July 14, 1995. The complaint alleges that defendant's disclosure of the letter to the Sheriff's Department violated the Privacy Act, and that plaintiff suffered harm as a result. In an August 2, 1996, Decision and Order, familiarity with which is assumed, the court granted summary judgment in favor of defendant on the ground that plaintiff's letter was not a "record" for purposes of the Act. *Bechhoefer v. United States Dep't of Justice, Drug Enforcement Admin.*, 934 F.Supp. 535 (W.D.N.Y.1996). On appeal, the Court of Appeals vacated this court's judgment and remanded for further proceedings. The Second Circuit held that the term "'record' under the Privacy Act has 'a broad meaning encompassing,' at the very least, any personal information 'about an individual that is linked to that individual through an identifying particular.'" *Bechhoefer v. United States Dep't of Justice, Drug Enforcement Admin.*, 209 F.3d 57, 62 (2d Cir.2000) (quoting *Quinn v. Stone*, 978 F.2d 126, 133 (3d Cir.1992)). Applying that test to the facts of this case, the court concluded that Bechhoefer's letter was indeed a "record" within the meaning of the Act. *Id.*

The Court of Appeals declined, however, to consider either of the two alternative grounds for affirmance advanced by defendant: (1) that the letter was not contained within a "system of records" as defined by § 552a(a)(5) and as required by the plain language of § 552a(b); or (2) that disclosure of the letter was permissible pursuant to an exception in § 552a(b)(3) for a "routine use." The Court of Appeals directed that the district court should consider those alternative arguments in the first instance, and therefore remanded the case for further proceedings on those issues. *Id.* at 63.

Following remand, the DEA renewed its motion for summary judgment, and the parties have submitted additional briefs and evidence concerning the "system of records" and "routine use" issues. This Decision and Order constitutes my ruling on those issues.

## DISCUSSION

### I. "System of Records"

The Act prohibits government agencies from disclosing "any record which is contained in a system of records" without the consent of the individual to whom the record pertains, with certain exceptions, one of which-disclosure for a "routine use"-will be discussed below. 5 U.S.C. § 552a(b). "System of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5).

 "It is clear [that] the Privacy Act does not apply where documents or information at issue are not contained in the agency's 'system of records.'" *Manuel v. Veterans Admin. Hosp.*, 857 F.2d 1112, 1117 (6th Cir.1988), *cert. denied*, 489 U.S.

1055, 109 S.Ct. 1317, 103 L.Ed.2d 586 (1989). For a record to be part of a system of records, § 552a(a)(5) requires that the record be retrieved by the name or some other identifying particular of the individual to whom it relates. *See Henke v. United States Dep't of Commerce*, 83 F.3d 1453, 1461 n. 2 (D.C.Cir.1996) (retrieval *capability* is not sufficient to create a system of records; to be in a system of records, a record must in practice be retrieved by an individual's name or other personal identifier); *Baker v. Department of Navy*, 814 F.2d 1381, 1384–85 (9th Cir.) (Act's definition of "system of records" "makes coverage under the Act dependent upon the method of retrieval of a record rather than its substantive content"), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987).

In determining whether a document is part of a system of records, therefore, courts have looked at the method by which the information was retrieved. Documents not retrieved by the plaintiff's name or other identifier have been held not to be part of a system of records. *See, e.g., Bettersworth v. F.D.I.C.*, 248 F.3d 386, 391–92 (5th Cir.2001) (Federal Reserve Bank records maintained in files referencing the names of banks with which plaintiff was associated, rather than plaintiff personally, were not maintained in system of records retrievable by plaintiff's name, and thus were not covered by the Privacy Act), *petition for cert. filed*, —— U.S. ——, 122 S.Ct. 547, —— L.Ed.2d ——, 70 U.S.L.W. 3193 (2001); *Gowan v. United States Dep't of Air Force*, 148 F.3d 1182, 1191 (10th Cir.) (file marked "Ethics," which contained information about various people and investigations of ethics issues, including information concerning investigation of activities of plaintiff, did not bear personal identifier of plaintiff, so that file was not part of "system of records" for purposes of Privacy Act), *cert. denied*, 525 U.S. 1042, 119 S.Ct. 593, 142 L.Ed.2d 535 (1998); *Manuel*, 857 F.2d at 1117 (documents generated by undercover investigators were not indexed under any name, and were therefore not part of any "system of records" within meaning of Privacy Act); *Cuccaro v. Secretary of Labor*, 770 F.2d 355, 359–60 (3d Cir.1985) (documents relating to agency's investigation of accident involving plaintiff were not tied to plaintiff's name and thus were not covered by the Privacy Act); *Wren v. Heckler*, 744 F.2d 86, 90 (10th Cir.1984) (records not covered by the Privacy Act because they were not retrievable by the plaintiff's name, even though information contained in the records related to plaintiff).

In the case at bar, plaintiff contends that the letter he sent to Gelina was contained in a system of records because someone at the DEA, probably Nearing, must have retrieved it by reference to plaintiff's name when the letter was disclosed to the Sheriff's Department. The evidence indicates that Nearing had spoken about the letter in a telephone conversation with Investigator Christensen.[1] At some point, Christensen asked Nearing to fax him a copy of the letter, which Nearing did. Plaintiff asserts that Nearing must have retrieved the letter by plaintiff's name in order to fax it to Christensen.

Nearing testified at his deposition that he believed that Gelina had given him the

---

**1.** Plaintiff's letter described Christensen as having been the "right hand man" of Richard Ackerman, the former Undersheriff of Yates County, who plaintiff said "may [have] be[en] involved in the distribution of drugs ...." Adams Supp. Aff., Ex. E. The letter also stated that Christensen had handled the investigation of two recent drownings in Yates County. Plaintiff opined that the drownings were drug-related homicides, and intimated that the "investigation" had in fact been a cover-up.

letter after it was received at the DEA office in Rochester, where Nearing and Gelina were based. Nearing did not recall specifically what he did with the letter or where he kept it at all times, but he stated that he probably either gave it back to Gelina or kept it in his desk drawer during 1993, when the events at issue occurred. Affidavit of Brian M. McCarthy (Docket Item 36), Ex. 2 at 20. Gelina testified at a deposition taken in connection with the state court defamation actions that after reviewing the letter, he gave it to Nearing. Taken together, Nearing's and Gelina's testimony suggests that Nearing most likely kept the letter in his desk. Affidavit of Anthony J. Adams, Jr. (Docket Item 38), Ex. A at 44.

Nearing also testified about DEA practices for opening case and investigatory files, and the way that such files would be stored, marked and retrieved. He stated, however, that neither he nor anyone else in his office ever actually opened or created a file concerning plaintiff or any of plaintiff's communications with the DEA. McCarthy Aff., Ex. 2 at 20, 25.

All that the record shows, then-and plaintiff does not appear to contend otherwise-is that Nearing put the letter in his desk drawer with other assorted, unrelated documents. That fact is further made evident from the following passage from his deposition:

Q. I take it that the documents kept in that drawer were more or less random documents? They did not necessarily have any relationship to one another?

A. Yes.

Q. If, for example, Bechhoefer's letter was in there, other correspondence from other unrelated individuals might have been in there as well?

A. Yes.

Q. If you were asked to retrieve letters from that drawer, there really was no filing system, right? They were just in there?

A. Correct.

Q. So you would access them by whatever reference the inquirer had made? If somebody said, "I want the letters Bechhoefer sent," you would have to go in there and look for Bechhoefer's name, right?

A. Yes.

McCarthy Aff., Ex. 2 at 28–29.

In my view, based on the language of the statute itself and the case law construing § 552a(a)(5), this evidence does not support a finding that plaintiff's letter was contained in a system of records for purposes of the Act. The letter never became incorporated into the DEA's formal recordkeeping system, nor was it even part of an informal system maintained by Nearing or anyone else at the DEA.

As stated, the language of the Act itself supports this conclusion. The statutory definition of "system of records" is a commonsense one: "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." This definition could include anything from a filing cabinet arranged alphabetically by the subject's name, to a computer program capable of retrieving records from a database when a user enters an individual's name or other identifying information. All such arrangements, however, are plainly "systematic," in the sense that they are designed to permit retrieval of the records they contain by reference to the subject's name or some other identifier. Anyone with an understanding of the system, and who possesses the relevant identifier, could

retrieve a record relating to a particular person from that system with little difficulty. *See Stewart v. F.B.I.*, No. CV–97–1595, 2000 WL 281693, *10 (D.Or. Mar. 15, 2000) ("This requirement [that a record is part of a system of records only if it is labeled with the plaintiff's name or other specific identifier of the plaintiff] appears to be designed to ensure that the record is an agency record that is easily retrievable by more than one person"), *order withdrawn pursuant to stipulation*, 2000 WL 739253 (D.Or. May 12, 2000).

In contrast, the only evidence here is that plaintiff's letter was simply lying in a desk drawer along with other, totally unrelated documents. The only way to retrieve it was for Nearing-knowing from memory that he had placed the letter in the drawer-to thumb through the papers in his drawer, one by one, until he found what he was looking for. That Nearing may have kept a small enough number of documents in his desk to make this practicable should not obscure the fact that this was not a "system" as that term as defined in the Act, any more than if Nearing had kept hundreds of documents in this unorganized fashion. Even assuming that Nearing himself had some knowledge of the general nature of the documents that he kept in his desk, *e.g.*, documents that did not relate to an existing file, plainly those documents were *not* maintained in a system keyed to individuals' names or other identifying particulars. *See Boyd v. Secretary of the Navy*, 709 F.2d 684, 686–87 (11th Cir.1983) (memorandum was not in a system of records, since it was not keyed to plaintiff's name or other identifier; "It was

kept within a random-type file and could only be retrieved by searching through the file"), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984) [2].

Plaintiff emphasizes that when Nearing retrieved the letter, he presumably identified it by looking at plaintiff's name on the letter. Plaintiff contends that the letter therefore constitutes a record "retrieved by the name of the individual" to whom it relates. Plaintiff, however, confuses *retrieving* a document with *identifying* the document. If one is looking for a letter from a particular person, one will probably look at the name on the letter in order to identify it as the letter being sought. If that letter is in a stack of unrelated, miscellaneous documents, however, it cannot be said to be contained within a group of records organized in such a fashion that information can be retrieved by an individual's name.

Courts in similar cases have held that a system of records did not exist where a document or set of documents was kept with other unrelated papers or where it was retrieved simply from a person's memory of where it was kept. *See, e.g., Hudson v. Reno*, 130 F.3d 1193, 1206 (6th Cir.1997) ("Plainly, Dedrick's notes about Plaintiff's misconduct which were kept in a locked drawer and labeled the 'First Assistant's' files do not fall within [the] definition" of "system of records," since they were not retrievable under plaintiff's name), *cert. denied*, 525 U.S. 822, 119 S.Ct. 64, 142 L.Ed.2d 50 (1998); *Smith v. Henderson*, No. C–96–4665, 1999 WL 1029862 (N.D.Cal.1999) (hiring coordinator's "never-never drawer," which she de-

---

**2.** Although the Second Circuit has disagreed with the test set forth by the Eleventh Circuit in *Boyd* for whether an item qualifies as a record within the meaning of the Privacy Act, *see Bechhoefer*, 209 F.3d at 60, the Second Circuit expressed no opinion about what constitutes a system of records. *Id.* at 63. Since

the court in *Boyd* held that the memorandum at issue in that case *was* a record, its holding that the memorandum was not part of a *system* of records is not affected in any way by the Eleventh Circuit's use of a different standard from that adopted by the Second Circuit for determining what constitutes a record.

scribed as a locked drawer containing a file folder in which she kept her own notes or various other pieces of paper relating to "special circumstances" hires, was not a "system of records" because she did not utilize the drawer to systematically file and retrieve information about individuals indexed by their names), *aff'd,* 17 Fed.Appx. 731, 2001 WL 1019557 (9th Cir.2001) (unreported decision); *Fagot v. FDIC,* 584 F.Supp. 1168, 1174 (D.P.R.1984) (plaintiff's unlawful-disclosure claim under Privacy Act failed, because decision to search in particular file of particular bank was the result of local examiner's personal recollection of plaintiff's involvement with that bank as director and attorney, and there was no indication that this information was retrieved from a system of records keyed to plaintiff's name or other personal identifier); *cf. Bowyer v. United States Dep't of Air Force,* 804 F.2d 428, 431–32 (7th Cir. 1986) (fact issues existed about whether memos relating to plaintiff were retrievable by reference to his name, where plaintiff's supervisor claimed that memos for all employees were kept in one plain, unlabeled folder, but witness testified that he found folder with his name on it on supervisor's desk that contained memos pertaining only to witness, and that he saw other file folders marked with different names).

Were plaintiff's interpretation of the Act to be accepted, the disclosure provisions of the Privacy Act would extend to virtually any and all pieces of paper, no matter how those documents were stored. If that were Congress's intent, however, there would have been no need to modify "any record" in § 552a(b) by adding the phrase "which is contained in a system of records." Plaintiff's construction of the statute, then, reads that modifying phrase completely out of § 552a(b).

This is also apparent from an examination of the Act's access provisions, dealing with the right of individuals to gain access to their own records. Like the disclosure provisions of § 552a(b), the access provisions in § 552a(d) apply to "[e]ach agency that maintains a system of records." In general, an individual has the right to see and review his own record kept within a system of records, and, if he disagrees with its contents, to request that the record be amended. 5 U.S.C. § 552a(d)(1), (d)(2).

In applying § 552a(d), however, courts have held that the "qualifying language in the statute [limiting access to records contained in a "system of records"] reflects a statutory compromise between affording individuals access to those records relating directly to them and protecting federal agencies from the burdensome task of searching through agency records for mere mention of an individual's name. Many of the published Privacy Act cases are aimed at giving meaning to this statutory requirement." *Bettersworth,* 248 F.3d at 391 (collecting cases). In other words, agencies are not obligated to comb through *all* of their records-or to require their employees to sift through all the papers in their possession-every time an individual makes a request for his record. The agencies need only provide those records that are contained in a system of records and are retrieved by reference to the individual making the request. *See also Connelly v. Comptroller of the Currency,* 673 F.Supp. 1419, 1424 (S.D.Tex. 1987) ("Clearly, the explicit restriction to a 'system of records' [in § 552(d) ] is to prevent the creation of a duty on the part of a defendant to comb its records for mention of a requestor's name, or alternatively, to develop elaborate cross-referencing systems"), *rev'd on other grounds,* 876 F.2d 1209 (5th Cir.1989); *Fagot v. FDIC,* 584 F.Supp. 1168, 1174 (D.P.R.1984) (system of records requirement "responds to practical considerations for the burden imposed on

agencies in having to rummage through tons of papers identified by all sorts of subject matters in order to locate information related to a requester can reach unsurmountable and possibly absurd proportions"); *Ferri v. United States Dep't of Justice,* 573 F.Supp. 852, 858 (W.D.Pa. 1983) ("access under the Privacy Act is limited to records that can be retrieved by certain identifying marks used by the agency, and the agency is not required to search each and every record it maintains in order to discover material that might fulfill a request"); *see also Baker,* 814 F.2d at 1384 (agency guidelines, regulations and case law "provide overwhelming support for using a record's method of retrievability to determine the scope of accessibility").

Thus, on the facts presented here, had plaintiff in the case at bar submitted a request for his record with the DEA, the DEA would not have been obligated under the Privacy Act to locate and provide him with his letter to Gelina, because that letter was not part of a system of records. *See Baker,* 814 F.2d at 1385 ("an individual's ability to obtain access to a record . . . because of personal knowledge of its existence in a certain file, will not provide that individual with access to the record or to any remedies under the Privacy Act," unless the record is individually keyed to the requester). No search of the DEA's system of records, keyed to plaintiff's name or other identifying information, would be expected to have turned up the letter, and indeed defendant states, and plaintiff does not dispute, that an actual search of the DEA's automated indexing system, NADDIS, yielded no records retrievable by plaintiff's name. Declaration of Patsy L. Turner (Docket Item 11 Ex. 1) ¶¶ 6, 7.

In addition, this is not a case where the agency was in fact maintaining a system of records, but simply did not publicly acknowledge that fact by publishing a notice

of the system's existence in the Federal Register, as required by the Act. *See* 5 U.S.C. § 552a(e); *Henke,* 83 F.3d at 1459 (agency may not "simply refuse to acknowledge that it maintains a system of records and thereby insulate itself from the reach of the Privacy Act. To the contrary, if there is evidence that an agency in practice retrieves information about individuals by reference to their names, the mere fact that the agency has not acknowledged that it operates a system of records will not protect it from the statutory consequences of its actions"). There was never any system here of which this letter became a part.

Nor has there been any showing here that Nearing, or anyone else at the DEA, had any duty to enter plaintiff's letter into a system of records. As explained in the Supplemental Declaration of Kevin J. Janet, an Attorney Advisor in the Litigation Unit, Freedom of Information Section at the DEA, not every piece of paper that comes into a DEA office has to be entered into the DEA's system of records. Agents are instructed to strike a balance between maintaining a thorough indexing system on the one hand, and avoiding "cluttering [that system] with information of no practical value" on the other. Docket Item 39 ¶ 12 (quoting DEA Agents Manual, § 6233.32–Criteria for Indexing). Here, the evidence indicates that Nearing hung onto plaintiff's letter for a while to see if anything of value would come out of it, but eventually decided that plaintiff's allegations of drug activity were not worth pursuing, and at no time did he believe that the letter, or his and Gelina's other contacts with plaintiff, made it worth opening a case file or general file.

In short, all that transpired here was that Gelina gave plaintiff's letter to Nearing, who stuck it in his desk drawer along with a number or other miscellaneous doc-

uments, and later retrieved it from that drawer, from his own memory and personal knowledge of where he kept it, so that he could fax it to Christensen. At no time during these events did the letter ever become indexed in any way that would have made it possible to retrieve it by plaintiff's name or other identifying information. Accordingly, the letter never became a part of a system of records for purposes of the Privacy Act, and its disclosure to Christensen did not violate the Act.

## II. "Routine Use" Exception

■ Defendant also contends that disclosure of plaintiff's letter was permissible as a "routine use." The Act sets forth certain exceptions to the general prohibition of disclosure without consent in § 552a(b). Specifically, § 552a(b)(3) permits disclosure "for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section."

Section 552a(a)(7) defines "routine use" as meaning, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." In addition, § 552a(e)(4)(D) requires the agency to publish in the Federal Register a notice of the existence and character of the agency's system of records, including "each routine use of the records contained in the system, including the categories of users and the purpose of such use." The agency must also inform each individual whom it asks to supply information of the routine uses that may be made of the information. 5 U.S.C. § 552a(e)(3)(C); *Covert v. Harrington*, 876 F.2d 751, 755–56 (9th Cir. 1989).

The DOJ has promulgated regulations in the Federal Register concerning the routine uses of information maintained by the DEA. The regulations in effect in 1993,

when the relevant events in this case occurred, include among routine uses disclosure to "[s]tate and local law enforcement and regulatory agencies," "for law enforcement and regulatory purposes." Defendant's Memorandum of Law (Docket Item 11), Ex. 2 at 19. Privacy Act of 1974; Systems of Records, 52 Fed.Reg. 47,182, 47,211 (Dec. 11, 1987).

Defendant contends that plaintiff's letter, which contained allegations of criminal activity, was passed on to the Sheriff's Department for "appropriate action." Defendant's Memorandum of Law at 6. Defendant also contends that the disclosure of the letter was compatible with the purpose for which it was maintained, *i.e.* the investigation of criminal activity.

I find this argument unpersuasive, and at the very least it is not a sufficient basis upon which to grant summary judgment in favor of defendant. Nearing testified that after receiving the letter, he contacted the Sheriff's Department, and spoke to Christensen to let him know that the DEA had received a letter containing allegations of drug activity in Yates County. Nearing did not tell Christensen that plaintiff was the author of the letter. When Nearing described the contents of the letter, however, Christensen told him that Christensen was aware of a "political" situation going on in Yates County, and that he believed that Bechhoefer had written the letter. Nearing neither confirmed nor denied the truth of Christensen's suspicion. Adams Supp. Aff. (Docket Item 38), Ex. C at 36–37.

Nearing also testified that by the time he faxed the letter to Christensen, Nearing was satisfied that there was no merit to plaintiff's allegations of drug activity. *Id.* at 52. Nearing did not have the impression that Christensen intended to investigate plaintiff's allegations further; he believed that Christensen "just wanted a

copy of the letter to see the information contained on it." *Id.* at 49. The only real reason that Nearing could give for faxing the letter to Christensen was that Christensen "requested to look at the information." Adams Supp. Aff., Ex. D at 37.

Christensen himself testified (again in connection with one of the civil suits in state court) that he told Nearing that Christensen "had no doubt that it was Art Bechhoefer that was calling" Nearing, and that Christensen gave Nearing "a brief rundown of the ongoing feud that has been going on for years between Nicolo [one of the persons named in plaintiff's letter] and Bechhoefer." Adams Supp. Aff., Ex. F at 54–55. Based on his knowledge of plaintiff, Christensen did not believe there was any truth to his allegations. *Id.* at 61, 64. Christensen testified that he wanted to see a copy of the letter because he considered Bechhoefer a potential suspect in a recent fire at Nicolo's home. Christensen testified that he told Nearing of that fact when he asked Nearing to fax him the letter. Adams Supp. Aff., Ex. G at 33.

Based on this evidence, I certainly do not believe that defendant is entitled to summary judgment based on the routine-use exception, and I have my doubts about whether the evidence would even support a verdict for defendant at trial on that ground. Even assuming that Christensen's stated interest in the letter in connection with the fire at Nicolo's house constituted a valid law enforcement purpose for disclosure of the letter, it is difficult to see how that disclosure could be said to have been compatible with the purpose for which the letter was collected by the DEA. Nearing's and Gelina's initial interest in the letter was to investigate plaintiff's accusations of illegal drug activity by others; Christensen's interest was in investigating possible unlawful, non-drug-related activity by the plaintiff himself. Even if Christen-

sen did not communicate the reason for his interest in the letter to Nearing, there is no evidence in the record suggesting that Nearing had any reason to believe that Christensen wanted to follow up on plaintiff's allegations. I therefore decline to grant summary judgment for defendant on this ground.

## CONCLUSION

Defendant's motion for summary judgment (Docket Item 10) is granted, and the complaint is dismissed.

IT IS SO ORDERED.