Ricardo RIVERA, Plaintiffs

v.

John E. POTTER, Postmaster
General, Defendants

No. CIV. 04–2350(JP).

United States District Court,
D. Puerto Rico.

Nov. 29, 2005.

---

Marcos Valls–Sanchez, Cobian & Valls, San Juan, PR, for Plaintiffs.

Lisa E. Bhatia–Gautier, United States Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it the "Motion for Summary Judgment" (**docket No. 28**) filed by Defendant John E. Potter, Postmaster General of the United States, as well as Plaintiff Ricardo Rivera's opposition thereto (docket No. 34). Plaintiff Ricardo Rivera ("Rivera") alleges that United States Postal Service ("USPS") supervisors unlawfully disseminated private information about him in contravention of the Privacy Act, 5 U.S.C. § 552a. Defendant has moved for summary judgment. For the following reasons, the Court hereby **GRANTS** Defendant's motion (**docket No. 28**).

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). A fact is material if it might affect the outcome of the case. *Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). An issue is "genuine" if sufficient evidence exists to permit a reasonable trier of fact to resolve the issue in the non-moving

party's favor. *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to show affirmatively, through the filing of supporting affidavits or otherwise, that a genuine issue exists for trial. *See Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1992). In discharging this burden, the non-moving party may not rest upon mere allegations or denials of the pleadings. *See* Fed. R.Civ.P. 56(e).

On issues where the non-moving party bears the ultimate burden of proof, it must present definite, competent evidence to rebut the evidence put forth by the moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–257, 106 S.Ct. 2505, 2514–2515, 91 L.Ed.2d 202 (1986). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202. Indeed, summary judgment may be appropriate "... where elusive concepts such as motive or intent are at issue ... if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 259 (1st Cir.1994).

## III. MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

After thoroughly evaluating the parties' stipulations in the record, the Defendant's

statement of uncontested facts and supporting evidence, and the Plaintiff's opposition thereto, the Court determined that the following material facts are not in genuine issue or dispute:

1. At all times relevant to the facts of the case, Plaintiff Ricardo Rivera ("Rivera") was an employee of the United States Postal Service ("USPS") acting as a Chief Steward for the American Postal Workers Union ("APWU").

2. At the time, Plaintiff's supervisors were Myrna Vélez and Héctor Padró.

3. At that time, Carlos Pérez, Santiago Pérez and Charles Pazos were the USPS' Managers of Operations ("MDO"); MDO's supervise the employees' supervisors.

4. At all times relevant to this case, Pablo Claudio was an employee of the United States Postal Services, acting as Plant Manager.

5. As Plant Manager, Mr. Claudio was the person in charge of the mail processing and distribution duties for the Caribbean District.

6. Before September 4, 2001, Plaintiff Rivera had suffered four different falls from four different chairs.

7. All of the accidents were work-related, so Plaintiff filled out a CA–1 form for each accident and submitted it to the respective supervisor, which in turn sent it the Injury Compensation Office.

8. The Injury Compensation Office was managed at the time by Dr. Luis Echevarría.

9. On September 4, 2001, at 4:54 p.m., Pablo Claudio forwarded an email ("the September 4 email") in which he asked: "What about the shop steward has fallen from a chair four times? ? ?"

10. A printout of the September 4 email was left on the top of the table in the main bathroom along with a clipboard that belonged to manager Angel Hernández.

11. Employee Noel Concepción Rivera removed the September 4 email from the clipboard.

12. Noel Concepción was the union steward, who was representing Plaintiff Rivera in some grievances filed by Rivera.

13. On September 4, 2001, at 5:55 p.m., Luz M. Caro, an employee of the management of the USPS, wrote to management employees Charles N. Pazos, Leandro Saliva, Angel Hernández, Pablo Claudio, George Ortiz, José Rodríguez, Henry Roney, and Dana Fernandez an email, receipt requested, stating the following:

"(C)ase of Ricardo Rivera, Tour I. This is a pathetic case of Ricardo Rivera, them employee who has fallen at least 3 times from different chairs at the plant. He was also provided with a copy of my ccmail to the MDO of this tour. Ccmail form this office must be considered confidential and management information. Whoever is opening the ccmail from the MDO must be a double agent."

14. Pablo Claudio received this email.

15. On September 28, 2001, at 2:33 p.m., Pablo Claudio sent a an email ("the September 28 email") to Héctor Padró and Santiago Pérez, both members of management and supervisors of Ricardo Rivera, stating:

"(R)icardo Rivera is to be removed from the Postal Service !!! Charlie

Pazos was working on this issue. It is impossible for a person to fall five times from a chair. It does not make sense. We must go to the Department of Labor and challenge the connectivity. This seems like a fraud case and must be reported to the Inspection Service. Do Detective work and find out form the first accident to the last accident."

If someone of you wishes to give copy of this ccmail to Ricardo. Go ahead like they did with Lucy Caro's cc.

16. A printout of the September 28 email was also left at the main bathroom, where it was picked up by employee Bahamonde Quiñones, who gave it to Noel Concepción.

17. On October 12, 2001, at 5:58 p.m., Charles Pazos wrote an email ("the October 12 email") to Angel Hernández, Santiago Pérez, Héctor Padró, Pablo Claudio and Carlos M. Díaz, which read as follows:

"(C)hago:

Diaz and myself had coordinated beginning the removal from R.Rivera, PSM (Padro) and A. Aviles Automation (Brenes) and a couple of other with Villamil. You need to follow up. The case with Rivera five accidents within a time period, I gave Padro copy of the Arbitration decision for the same information. Besides. Diaz, gave a package of the contra version and fraud based allegations of the CA1 to Padro and the Inspection Service. Either way we understood that a Removal Charge could be favorable supported due to safety and fraud. Check out Code of Ethics and Chief Steward position use for personal advantage. Aviles and the others are for AWOL charges. Do not let this get away from us. I understand that Carlos informed you, but if you need any additional assistance, please do not hesitate to contact us."

18. A printout of the October 12 email was found by Jorge Rosario in the main bathroom; Rosario gave it to Noel Concepción.

19. All the persons listed above as recipients of the emails in question are members of USPS management, and each has a unique password for access into the email system.

20. They are not allowed to give the password to anyone else.

21. No employee or member of the union has access to the password.

22. Email from the office is considered confidential and management information by the USPS.

23. The bathroom is located in front of Pablo Claudio's office; the marking section, where the bulk of the employees are stationed, is also near the bathroom.

24. Plaintiff Ricardo Rivera has admitted that none of his medical documentation was disseminated.

25. The only personal information that Plaintiff alleges was disseminated was that he was going to be investigated for the falls from a chair that he had suffered in the workplace.

26. Pablo Claudio, requested the investigation of the five falls suffered by Plaintiff.

27. Pablo Claudio did not disseminate any information regarding Plaintiff.

28. Santiago Pérez, then Manager of Distribution Operations (MDO), did not disseminate any information regarding Plaintiff.

29. Plaintiff Rivera is still employed by the USPS.

## IV. CONCLUSIONS OF LAW

### A. Defendant's Statement of Uncontested Facts

Under Local Rule 56, known as the Anti–Ferreting Rule, any party opposing a motion for summary judgment must oppose the movant's set of uncontested facts by either accepting, denying or qualifying the movant's set of facts, while at the same time providing the Court with a statement of facts, properly supported by the record, which the non-movant believes to be contested. Each denial or qualification must be supported by a record citation. *See Loc. R. Civ. P. 56.* Failure to comply with these requirements by not including proper citations to the record results in the proposed facts being deemed admitted. *See Loc. R. Civ. P. 56; see also Cosme–Rosado v. Serrano–Rodríguez,* 360 F.3d 42, 44–45 (1st Cir.2004) (holding that because Plaintiffs had failed to provide a supported factual basis for their claims against Defendants, the Court properly deemed admitted Defendants' supported facts).

In the instant case, Plaintiff filed an opposition to Defendant's Statement of Uncontested Facts, accepting two of Defendant's proposed uncontested facts and denying the remaining seven. However, the denials of the remaining seven facts were not accompanied by any effort to cite to the record. Therefore, pursuant to Local Rule 56, the Court hereby deems as uncontested all of Defendant's proposed uncontested facts which are properly supported and admissible.

### B. The Privacy Act

The Privacy Act, 5 U.S.C. § 552a, provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains[.]" 5 U.S.C. § 552a(b). The Privacy Act allows the injured person to bring civil action against the agency that fails to comply with the law. *See* 5 U.S.C. § 552a(g)(1)(D).[1] Furthermore, the Privacy Act provides that

> (4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—
>
> (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and
>
> (B) the costs of the action together with reasonable attorney fees as determined by the court.

 5 U.S.C. § 552a(g)(1)(4). In order to maintain a claim for damages under subsection (g)(1)(D) for a violation of the Privacy Act's central prohibition against disclosure, a plaintiff must advance evidence to support a jury's finding of four necessary elements: (1) the information is covered by the Act as a "record" contained in a "system of records"; (2) the agency "disclose[d]" the information; (3) the disclosure had an "adverse effect" on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was "willful

---

**1.** 5 U.S.C. § 552a(g)(1)(D) is commonly referred to as the "catch-all" provision of the Privacy Act. *See, e.g., Quinn v. Stone,* 978 F.2d 126, 131 (3d Cir.1992).

or intentional." *See Quinn v. Stone,* 978 F.2d 126, 131 (3d Cir.1992).

Defendant argues that Plaintiff has failed to state a claim under the Privacy Act upon which relief can be granted due to the fact that the emails that were left in the bathroom were not "records contained in a system of records" for the purposes of the Privacy Act. The Privacy Act defines a record as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as finger or voice print or a photograph.

 5 U.S.C. § 552a(a)(4). Upon examining the limited jurisprudence on this point of law, the Court concludes that Defendant's contention that the emails did not constitute a record contained in a system of records is legally incorrect. *See, e.g., Bechhoefer v. United States Dept. of Justice,* 209 F.3d 57 (2d Cir.2000) (holding that a letter from a member of a neighborhood group to the Drug Enforcement Administration on the subject of drug trafficking in the area where the letter contains identifying information about the writer can result in Privacy Act liability if released). Under the Privacy Act, "record" has a broad meaning encompassing, at the very least, any personal information about an individual that is linked to that individual through an identifying particular. *Bechhoefer,* 209 F.3d 57, 62, *quoting Quinn v. Stone,* 978 F.2d 126, 131 (3d Cir.1992). Given the broad definition of the term "record" under the Privacy Act, the emails in question in this matter may qualify as "records" because they identify the Plaintiff by name and contain information about a prospective investigation premised on an intimation of fraud on his part.

██ However, Plaintiff's claim fails on the ground that there is no evidence that would establish that the emails found in the bathroom are part of a "system of records" as defined by the Privacy Act. The Act defines a "system of records" as a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. 5 U.S.C. § 552a(a)(5). The phrase "under the control of the agency" was intended to accomplish two separate purposes: (1) to determine possession and establish accountability; and (2) to separate agency records from records which are maintained personally by employees of an agency but which are not agency records. *See Bechhoefer v. U.S. Dept. of Justice,* 312 F.3d 563, 566 (2d Cir.2002), *quoting Privacy Act Guidelines, reprinted in* Legislative History of the Privacy Act of 1974: Source Book on Privacy 1027 (1976). "It follows that the prescriptions of the Act do not come into play whenever a document falls into the possession of an employee of a covered agency." *Id.* at 566.

Aside from the Second Circuit in *Bechhoefer,* other courts have examined the issue of what constitutes a system of records. *See, e.g., Boyd v. Sec'y of the Navy,* 709 F.2d 684, 686–87 (11th Cir.1983) (because memorandum "was kept within a random-type file and could only be retrieved by searching through the file," it was not in a "system of records"); *see also Bettersworth v. FDIC,* 248 F.3d 386, 391–92 (5th Cir.2001) (records filed under names of financial institutions not part of system of records even though they contained information about individuals); *Gowan v. U.S. Dep't of the Air Force,* 148

F.3d 1182, 1191 (10th Cir.1998) (materials contained in a general disciplinary file labeled "Ethics" not within a system of records because file not keyed to plaintiff); *Hudson v. Reno,* 130 F.3d 1193, 1206 (6th Cir.1997), ("[N]otes about Plaintiff's misconduct which were kept in a locked drawer and labeled the 'First Assistant's' files" not in a system of records because not retrievable under plaintiff's name), *abrogated on other grounds by Pollard v. E.I. du Pont de Nemours & Co.,* 532 U.S. 843, 848, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

The documents at issue in this case are printouts of email messages that were found in a bathroom at the USPS facility where Plaintiff worked. Plaintiff has produced no evidence to the effect that the email messages found in the bathroom were part of any "system of records" as defined by the Privacy Act. There is no evidence on the record that would indicate to the Court that these emails were kept in any sort of filing system where they would be retrievable under Plaintiff Rivera's name. There is no indication from the evidence presented to the effect that someone at the USPS would be able find these emails filed away anywhere under Plaintiff's name. There is no evidence that emails such as the ones in question in this matter are kept or filed, nor that emails regarding individual employees are included in those employees' personnel files or other any other files specific to those employees. Therefore, because Plaintiff has failed to produce any evidence to the effect that the emails in question were part of a system of records, the Court hereby **GRANTS** Defendant's motion for summary judgment and **DISMISSES** Plaintiff's Complaint **WITH PREJUDICE.**

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' "Motion for Summary Judgment" (**docket No. 28**) and hereby **DISMISSES** Plaintiffs' Complaint **WITH PREJUDICE.**

**IT IS SO ORDERED.**